**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **PETER C. MAUTER, #M24019,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18-CV-02100-SMY** |
| | ) | |
| **MOHAMMED SIDDIQUI, M.D.,[1]** | ) | |
| **DR. TROST, M.D.,** | ) | |
| **DR. CALDWELL, M.D.,** | ) | |
| **DR. RITZ,** | ) | |
| **JOHN DOES #1 TO 3,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Peter Mauter, an inmate of the Illinois Department of Corrections currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He asserts deliberate indifference claims under the Eighth Amendment and a state law medical negligence claim. He requests monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

---

[1] In the Amended Complaint, Plaintiff names "Dr. M. Saddiqui, M.D." as a defendant and refers to him as Dr. Saddiqui. (Doc. 13). In the original Complaint, however, Plaintiff named "M. Siddiqui" as a defendant and referred to him as Dr. Siddiqui. (Doc. 1). Following the issuance of service, Mohammed Siddiqui, M.D. filed a waiver of service and counsel entered on his behalf. (Docs. 9, 14, 15). The Clerk of Court is DIRECTED to CORRECT the docket to reflect the proper name of Dr. Siddiqui as identified in the caption of this Order.

granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Amended Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

Plaintiff makes the following allegations in the Amended Complaint: In 2006, Plaintiff was diagnosed with degenerative spine disease, including moderate to severe hypertrophic changes to the L4-L5 facet joints. (Doc. 13, pp. 6, 25). When he entered Menard Correctional Center ("Menard") in 2012, he was under medical care with the Veteran's Administration ("VA") for the degenerative spine disease. *Id.* Plaintiff was treated by Dr. Fuentes from 2012 to 2014. *Id.* His VA records were forward to Dr. Fuentes and became part of his medical records at Menard. *Id.* In 2014, Dr. Fuentes requested that Wexford Health Sources, Inc. ("Wexford")[2] send Plaintiff to an outside hospital for spinal surgery due to his declining health. *Id.*

From 2014 to late 2017, Plaintiff treated with Dr. Trost, a Wexford physician, who denied Plaintiff medical treatment despite Plaintiff's reports of reduced mobility, severe pain with neurological symptoms, and inadequacy of Naprosyn as a pain reliever. (Doc. 13, pp. 7-8). Dr. Trost repeatedly told Plaintiff that he had arthritis. (Doc. 13, p. 8). Dr. Trost concealed Plaintiff's true diagnosis as part of an unlawful practice by Wexford to deny Plaintiff medical treatment for his degenerative spine disease. *Id.*

Plaintiff treated with Dr. Siddiqui, another Wexford physician, from 2016 to 2018. *Id.* Plaintiff reported pain down his legs, intense pain on the right side of his body, pain that caused him to fall to his knees, reduced mobility, inability to walk or shower, a significant loss of sleep

---

[2] Wexford is a contract healthcare provider for the Illinois Department of Corrections. (Doc. 13, p. 5).

due to pain, and that his pain was at a level of 7 out of 10. *Id.* Dr. Siddiqui ignored Plaintiff's complaints and failed to provide an effective pain reliever. (Doc. 13, p. 9). Dr. Siddiqui also ignored medical records showing that Plaintiff had advanced spine disease and told him he had arthritis and was getting old. *Id.*

In 2016, Dr. Trost and Dr. Ritz, a collegiate review physician with Wexford, denied Plaintiff an MRI to monitor the degenerative spine disease. (Doc. 13, pp. 4, 9). They knew that ten years had elapsed since the diagnosis at the VA. (Doc. 13, p. 9). At that time, Dr. Trost, Dr. Ritz, and Dr. Siddiqui knew Plaintiff was in "agonizing pain and was entering bedridden status" but denied him medical treatment and effective pain medication. *Id.* Later in 2016, Dr. Trost and Dr. Ritz again denied Plaintiff an MRI. *Id.* They ordered physical therapy, which Plaintiff attempted, but collapsed due to severe pain. *Id.* Plaintiff was told on multiple occasions that he would not receive an MRI or further care because it was too expensive, and Wexford would not pay for it. (Doc. 13, p. 17).

In 2017, radiology reports showed significant degenerative disc disease at L4-L5 level that had "further progressed since the prior examination." (Doc. 13, pp. 10, 33). Plaintiff continued to report to Dr. Siddiqui that Naprosyn was ineffective for pain relief. *Id.* Dr. Siddiqui ignored him, provided no pain relief, and told him x-rays showed only arthritis. *Id.* By October 2017, Plaintiff could no longer walk to the dining room. *Id.* Siddiqui issued a permit for him to eat in his cell but did not provide medical treatment or pain relief. *Id.* An MRI in January 2018 showed advanced degenerative spine disease. (Doc. 13, pp. 10, 31-32). Despite this information, Dr. Ritz and Dr. Siddiqui continued to deny Plaintiff medical treatment. *Id.*

By 2018, Plaintiff was bedridden; he had not been able to shower for several months and needed assistance to the toilet. (Doc. 13, p. 11). From 2012-2018, Drs. Trost, Ritz, and Siddiqui

had ignored Plaintiff's complaints that Naprosyn did not alleviate his pain. *Id.* In April 2018, Dr. Siddiqui provided Plaintiff with Ultram/Tramadol 150 mg daily, which was an effective pain reliever. *Id.* In May 2018, Dr. Siddiqui issued him a wheelchair. (Doc. 13, pp. 11, 37). Finally, in 2018, Plaintiff had to undergo "major spinal surgery to fuse L4-L5, replace disks, and insert metal plates, metal rods, and screws." (Doc. 13, pp. 11-12).

From 2012 to 2018, Dr. Trost, Dr. Siddiqui, Dr. Ritz, and Dr. Caldwell (all Wexford physicians) refused to place Plaintiff on chronic clinic to monitor his spine. *Id.* This required him to request medical services which delayed medical treatment. *Id.*

Dr. Siddiqui, Dr. Trost, Dr. Ritz, Dr. Caldwell, and Wexford failed to inform Plaintiff that chronic use of Naprosyn causes kidney disease and kidney failure. (Doc. 13, p. 13). Additionally, from 2012-2018, Defendants, including John Does #1-3, failed to properly monitor Plaintiff for diseases caused by chronic NSAID use. *Id.* Defendants knew that 1500 mg daily of Naprosyn exceeded minimum safety guidelines of the U.S. Food and Drug Administration ("FDA"). *Id.* Dr. Siddiqui knew that 1500 mg of Naprosyn daily was dangerous and should not be used for long-term pain management for spine disease. *Id.*

In 2017, Plaintiff reported "additional symptoms" to Dr. Caldwell and a blood test confirmed kidney damage. *Id.* Dr. Caldwell discontinued Naprosyn, but did not offer any alternative pain relief for Plaintiff's ongoing and unresolved pain. (Doc. 13, p. 14). Dr. Siddiqui, Dr. Trost, Dr. Ritz, Dr. Caldwell, and Wexford have acknowledged Plaintiff's "serious medical need for kidney care, but refuse[d] to provide it . . . ." (Doc. 13, p. 14).

Based on the allegations in the Amended Complaint, the Court finds it convenient to designate the following Counts:

Count 1: Eighth Amendment claim against Siddiqui, Trost, Ritz, Caldwell, John Does #1-3, and Wexford for deliberate indifference to

Plaintiff's serious medical needs relating to degenerative spine disease.

Count 2:    Eighth Amendment claim against Siddiqui, Trost, Ritz, Caldwell, John Does #1-3, and Wexford for deliberate indifference to the risk of substantial harm caused by long-term use of Naprosyn and in failing to monitor Plaintiff for the harm caused by long-term use.

Count 3:    Eighth Amendment claim against Siddiqui, Trost, Ritz, Caldwell, and Wexford for deliberate indifference to Plaintiff's serious medical needs relating to kidney disease.

Count 4:    Illinois state law claim for medical negligence against Siddiqui, Trots, Ritz, Caldwell, John Does #1-3, and Wexford for disregarding the risk of substantial harm caused by long-term use of Naprosyn and failing to monitor Plaintiff for the harm caused by long-term use.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding their merit. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.[3]

## Discussion

### Count 1

Prison officials impose cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). To state a claim for deliberate indifference, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) defendant was deliberately indifferent to a risk of serious harm from

---

[3] An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

that condition.  *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

Dr. Trost was aware of Plaintiff's ongoing pain, neurological symptoms, and deteriorating condition in 2014 and Drs. Siddiqui and Ritz became aware in 2016.  According to Plaintiff, the physicians did not provide meaningful treatment that alleviated his pain or the other sequelae of the degenerative spine disease until 2018.  These allegations are sufficient for a deliberate indifference claim to proceed against Drs. Siddiqui, Trost, and Ritz in their individual capacities.  However, the official capacity claims, however, will be dismissed without prejudice.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (an individual in his official capacity is not a person for purposes of section 1983).

Plaintiff's allegations in Count 1 also support a claim against Wexford.  When a private corporation has contracted to provide essential government services, such as health care for inmates, the corporation can be held liable under Section 1983 if the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) and *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a Section 1983 action).  Here, Plaintiff alleges he suffered ongoing and unresolved pain and deteriorating mobility from his degenerative spine disease for six years as a result of Wexford's practice of denying and delaying treatment for serious medical conditions.  He also alleges widespread practices by Wexford to conceal the seriousness of a patient's medical condition from the patient in an effort to deny care, to ignore or discount medical records containing diagnosis by non-Wexford medical providers, and to delay and obstruct treatment, including diagnostic testing, all to save costs.  These allegations are sufficient to state a colorable deliberate indifference claim against Wexford.

Count 1 fails to state a viable deliberate indifference claim against Dr. Caldwell, however. There are only a few mentions of Dr. Caldwell in the Amended Complaint. The allegation that Dr. Caldwell refused to place Plaintiff on chronic clinic to monitor his spine is a general allegation aimed at all of the doctors. Apart from that allegation, there is no information regarding Dr. Caldwell's knowledge of Plaintiff's condition or as to dates of treatment with Dr. Caldwell, other than when he diagnosed Plaintiff's kidney damage in 2017. There are no allegations suggesting that Dr. Caldwell knew there was a risk of harm to Plaintiff or that he consciously disregarded any such risk. *See Mathis v. Fairman,* 120 F.3d 88, 91 (7th Cir.1997). Nor does Dr. Caldwell's discontinuation of the Naprosyn prescription following the kidney damage diagnoses (because it was the alleged cause of the kidney damage) suggest deliberate indifference.

Any claim against John Does #1-3 also fails. The only mention of Doe defendants related to Count 1 is a general and conclusory statement that "Count #1 alleges unreasonable, unlawful delay by Defendants, including Does #1 to 3, to provide pain relief . . . ." (Doc. 13, p. 12). This single allegation is insufficient to state a deliberate indifference claim against any Doe defendant. While Plaintiff may use "John Doe" or "Jane Doe" to refer to parties whose names are unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards by including a short, plain statement of the case against that individual. Here, Plaintiff does not describe the unknown defendants, state when he encountered the unknown defendants, or identify particular acts or omissions by specific unknown defendants that allegedly violated his constitutional rights.

For the reasons stated, the claim in Count 1 will proceed against Wexford and Drs. Siddiqui, Trost, and Ritz. The claim against Dr. Caldwell and John Does #1-3 will be dismissed without prejudice.

**Count 2**

Plaintiff alleges he took Naprosyn from 2012-2018 and that Defendants, including John Does #1-3, failed to monitor him for potential harm caused by long-term use of that medication. He further alleges Defendants knew that 1500 mg daily of Naprosyn exceeded minimum safety guidelines of the FDA and that Dr. Siddiqui knew that Naprosyn should not be used in long-term pain management. Apart from these general allegations, Plaintiff has not pled that Dr. Caldwell or John Does #1-3 prescribed Naprosyn for him or were even aware he was taking Naprosyn for an extended period of time. The only specific mention of Dr. Caldwell related to the Naprosyn prescription is that he diagnosed Plaintiff's kidney damage in 2017 and discontinued the Naprosyn. There are no allegations providing any general identification information for John Does #1-3 or their role in Plaintiff's medical treatment. Accordingly, the claim fails as to Dr. Caldwell and John Does #1-3 and they will be dismissed without prejudice.

On the other hand, Plaintiff sufficiently alleges that Drs. Trost, Ritz, and Siddiqui either prescribed Naprosyn or were treating Plaintiff for an extended period of time with knowledge that he was taking Naprosyn. Therefore, the claim in Count 2 will proceed against Drs. Trost, Ritz, and Siddiqui for deliberate indifference to the risk of substantial harm caused by long-term use of Naprosyn and for failing to monitor Plaintiff for the harm caused by long-term use of that medication. Similar to Count 1, the claim in Count 2 will also proceed against Wexford based on the allegations of its widespread practices of delaying and obstructing treatment, including diagnostic testing, to save costs.

**Count 3**

Plaintiff alleges that Drs. Siddiqui, Trost, Caldwell, Ritz, and Wexford "acknowledge Plaintiff's serious medical need for kidney care, but refuse to provide it . . . ." This allegation,

standing alone, is not sufficient to state a claim for deliberate indifference. Plaintiff provides no facts regarding his kidney disease other than the diagnosis by Dr. Caldwell. There are no allegations as to what the individual physicians knew about his kidney disease, what treatment was sought or needed, what treatment was denied, or why treatment was denied. In other words, Plaintiff has not sufficiently alleged the physicians both knew there was a risk of harm to him and consciously disregarded that risk. *See Mathis v. Fairman,* 120 F.3d 88, 91 (7th Cir.1997).

Similarly, the single allegation is insufficient to establish a deliberate indifference claim against Wexford. And, again, to the extent Plaintiff is making a claim against Wexford based on a theory of respondent superior liability, it is not supported by the law. *Shields.*, 746 F.3d at 789 (citing *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir.1982)). Count 3 will, therefore, be dismissed without prejudice.

## Count 4

Plaintiff's allegations also state a medical negligence claim based on the same facts as the deliberate indifference claim in Count 2. However, under Illinois law, a plaintiff who seeks damages for "injuries or death by reason of medical, hospital, or other healing art malpractice" must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that a claim is reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or (3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the report shall be filed within 90 days of receipt of the records). *See*

ILCS 5/2–622(a). This documentation "is required to file a medical negligence claim under Illinois law, even in federal court." *Rusinowski v. Vill. of Hillside,* 835 F.Supp.2d 641, 652 (N.D.Ill. 2011) (citing *Sherrod v. Lingle*, 223 F.3d 605, 613-14 (7th Cir. 2000)).

Plaintiff failed to file the documentation required by 735 ILCS 5/2–622(a). Accordingly, he will be granted leave to do so within 90 days from the entry of this Order.

## Request for Injunctive Relief

Plaintiff requests injunctive relief and seeks an Order that Defendants provide Plaintiff with medical treatment "for illnesses described [in the Amended Complaint] as well as any illness concealed or as may develop." (Doc. 13, p. 21). As previously explained in the preliminary review of the original Complaint, the relief Plaintiff seeks is likely unavailable to him in this action. His claims pertain to the denial of medical treatment at Menard, but he is currently incarcerated at Lawrence. When an inmate is transferred to another prison, his request for injunctive relief against officials at the first prison is generally moot, unless "he can demonstrate that he is likely to be retransferred" back to the prison. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (citation omitted); *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Plaintiff has made no such showing.

If Plaintiff believes that he is not receiving adequate medical treatment at the facility where he is currently housed, he must file a new lawsuit naming as defendants the individuals at that facility who are responsible for providing him with care. Plaintiff may then file a Rule 65 motion for a temporary restraining order and/or preliminary injunction in that action, if he believes that the requirements for obtaining such relief have been met.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** will proceed against Defendants **SIDDIQUI,**

**TROST, RITZ,** and **WEXFORD HEALTH SOURCES, INC**. **COUNT 1** is **DISMISSED** without prejudice as to **CALDWELL** and **JOHN DOES #1-3**.

IT IS FURTHER ORDERED that **COUNT 2** will proceed against Defendants **SIDDIQUI, TROST, RITZ,** and **WEXFORD HEALTH SOURCES, INC**. **COUNT 2** is **DISMISSED** without prejudice as to **CALDWELL** and **JOHN DOES #1-3**.

IT IS FURTHER ORDERED that **COUNT 3** is **DISMISSED** without prejudice.

IT IS FURTHER ORDERED that, as to **COUNT 4**, Plaintiff is granted leave to file the documentation required by 735 ILCS 5/2–622(a) within 90 days. Plaintiff is ADVISED that the failure to file the documentation within the allotted time will result in dismissal of his claim.

IT IS FURTHER ORDERED that the Clerk of Court is **DIRECTED** to terminate **CALDWELL** and **JOHN DOES #1-3** as parties in the Court's Case Management/Electronic Case Filing ("CM/ECF") system. Further, the Clerk of Court is **DIRECTED** to change the name of Defendant Dr. M. Saddiqui, M.D. in accordance with footnote 1.

IT IS FURTHER ORDERED that the Clerk of Court shall prepare for **TROST, RITZ,** and **WEXFORD HEALTH SOURCES, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that if a Defendant cannot be found at the work address

provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants **TROST, RITZ,** and **WEXFORD HEALTH SOURCES, INC.** are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Defendant SIDDIQUI is **ORDERED** to file a responsive pleading within fourteen days of the date of this Order in accordance with the Court's Order of April 16, 2019. (Doc. 18).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 10, 2019**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

<u>**Notice to Plaintiff**</u>

The Court will take the necessary steps to notify the appropriate Defendants of your lawsuit and serve them with a copy of your Amended Complaint.  After service has been achieved, Defendants will enter their appearance and file Answers to your Amended Complaint.  It will likely take at least **60 days** from the date of this Order to receive Defendants' Answers, but it is entirely possible that it will take **90 days** or more.  When all Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**