IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PETER C. MAUTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-2100-RJD |
| | ) | |
| MOHAMMED SIDDIQUI, JOHN TROST, | ) | |
| DR. RITZ, and WEXFORD HEALTH | ) | |
| SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Peter Mauter, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit on November 20, 2018 pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). In his complaint, Plaintiff alleges he was provided inadequate medical treatment for his medical conditions, including lower back pain. Plaintiff filed a First Amended Complaint on March 8, 2019 that was screened pursuant to 28 U.S.C. § 1915A. Plaintiff is proceeding on the following claims:

Count One: Eighth Amendment claim against Siddiqui, Trost, Ritz, and Wexford for deliberate indifference to Plaintiff's serious medical needs relating to degenerative spine disease.

Count Two: Eighth Amendment claim against Siddiqui, Trost, Ritz, and Wexford for deliberate indifference to the risk of substantial harm caused by long-term use of Naprosyn and in failing to monitor Plaintiff for the harm caused by long-term use.

This matter is now before the Court on Defendants' motion for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 45). Plaintiff filed

a response on November 14, 2019 (Doc. 53).  Plaintiff also filed an objection to Defendants' motion on January 28, 2020 (Doc. 65).  The Court construes this filing as a supplemental response.  Defendants filed a motion to strike the objection (Doc. 66).  The motion to strike is **DENIED**, and the Court will consider Plaintiff's supplemental response.

## Background

Both Plaintiff and Defendants submitted a number of grievances into the record before the Court.  At the hearing on Defendants' motion, Plaintiff asserted that the only grievance on which he is relying to establish exhaustion of his administrative remedies is dated November 28, 2017.  Thus, while there are numerous other grievances in the record, said grievances are not discussed any further in this Order[1].

In his grievance dated November 28, 2017, Plaintiff grieves issues related to blood tests, kidney failure, Naproxen, and chronic lower back pain (Doc. 46-1 at 18-19).  Plaintiff identifies Dr. Caldwell, Dr. Fuentes, Dr. Shearing, Dr. Trost, and Dr. Siddiqui.  Plaintiff's counselor received this grievance on December 4, 2017, and responded on January 2, 2018.  The Grievance Officer recommended that the grievance be found moot on February 14, 2018, and the CAO concurred on February 16, 2018.  The Administrative Review Board ("ARB") received this grievance on April 17, 2018, and returned it without a decision the merits on April 20, 2018 indicating it was not received within 30 days of the CAO's decision.

Defendants assert that the Menard grievance logs show that this grievance was returned to Plaintiff on February 21, 2018.  Defendants contend Plaintiff failed to submit this grievance to the ARB within the 30-day timeframe required by the Illinois Administrative Code and, as such, it was not exhausted.

---

[1] The Court also notes it is not apparent from the record that any of these other grievances were fully exhausted.

In an affidavit submitted along with his Complaint, Plaintiff asserts he submitted this grievance to the ARB on April 12, 2018 (Doc. 1-1 at 4). Plaintiff explains Menard was on lockdown from February 19, 2018 through March 9, 2018, and during this time he filed numerous requests to attend law library to make a copy of this grievance. Plaintiff attests he was not called to the law library to make a copy until April 2018. In his supplemental response (Doc. 65), Plaintiff contends the Grievance Officer, Kelly Pierce, failed to start her investigation within five days of receipt of the grievance, in contravention of an Administrative Directive.

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on February 6, 2020. At the hearing, Plaintiff testified he mailed his November 28, 2017 grievance to the ARB on April 12, 2018. Plaintiff acknowledged the CAO responded to this grievance on February 16, 2018, but explained he was delayed in sending it to the ARB because Menard was on lockdown until March 9, 2018. Plaintiff also testified he did not receive this grievance with the CAO's response until March 10, 2018. In support of this argument, he notes there is a stamp on this grievance dated March 7, 2018. Plaintiff posited that this was the date on which the Grievance Office sent the grievance back to him. Plaintiff testified he did not have sufficient time to obtain a copy of the grievance and submit it to the ARB within 30 days of the CAO's February 16, 2018 response. Plaintiff acknowledged he understood he was not required to make a copy prior to sending his grievance to the ARB, but indicated it was strongly recommended.

Kelly Pierce, a Grievance Officer at Menard (who reviewed Plaintiff's November 28, 2017 grievance), also testified at the hearing. Ms. Pierce explained that grievances are logged when they are received by the Grievance Office. Ms. Pierce testified that the CAO signed the grievance on February 16, 2018, and, based on a review of the Menard Grievance Logs, it was returned to

Plaintiff on February 21, 2018. Ms. Pierce stated that the Grievance Office does not stamp a grievance on the date it is returned to an inmate. Ms. Pierce testified that if Plaintiff had resubmitted this grievance to the Grievance Office in March 2018 it would have been stamped again upon receipt, but it would have been promptly returned to Plaintiff as it had already been addressed.

## **Legal Standards**

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### *Exhaustion Requirements*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available

administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it

directly to the Chief Administrative Officer.  *Id.* § 504.840.  If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.  *Id.*  Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.  *Id.* at § 504.870.

## Discussion

Based on the evidence in the record, the Court finds Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

Pursuant to the Illinois Administrative Code, an appeal of the CAO's response must be received by the ARB within 30 days after the date of the decision.  20 ILCS § 504.850(a).  The Court finds Plaintiff's November 28, 2017 grievance was not appealed within the required 30-day timeframe.  The CAO responded to this grievance on February 16, 2018.  The Court does not credit Plaintiff's testimony that he did not receive the CAO's response until March 10, 2018.  Indeed, such testimony contradicts Plaintiff's affidavit and hearing testimony in which he attests he attempted to make a copy of this grievance while the institution was on lockdown from February 19, 2018 through March 9, 2018.  Plaintiff certainly could not have sought to make a copy of a grievance he did not have in his possession.  Also, the Court notes there is no requirement for Plaintiff to make a copy, and there is no indication he was unable to make a handwritten copy if he so chose.  Further, Plaintiff's testimony that he received this grievance on March 10, 2018, and his reliance on the stamp on the grievance indicating a date of March 7, 2018 is misplaced.  As Ms. Pierce testified, the Grievance Office does not stamp a grievance when it is

sent back to an inmate.  For these reasons, the Court finds Plaintiff failed to timely submit his November 28, 2017 to the ARB on appeal and, as such, this grievance was not exhausted.  The Court further finds no evidence that Plaintiff was thwarted in his attempts to exhaust his grievance.

## Conclusion

Based on the foregoing, Defendants' Motion to Strike (Doc. 66) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. 45) is **GRANTED**.  This matter is **DISMISSED WITHOUT PREJUDICE**.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: February 12, 2020**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**